

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. TODD HEWITT, )
                              )
            Relator, )
                              )
v.                              )      No. SC93846
                              )
HONORABLE KRISTINE KERR, )
JUDGE, CIRCUIT COURT for )
ST. LOUIS COUNTY, MISSOURI, )
                              )
           Respondent. )

### ORIGINAL PROCEEDING IN MANDAMUS

*Opinion issued April 28, 2015*

PER CURIAM

A former employee of the St. Louis Rams Partnership, Todd Hewitt, seeks a writ of mandamus requiring the circuit court to vacate its order compelling arbitration of his claim of age discrimination against the St. Louis Rams Partnership and three of its affiliates. Five judges find that a writ of mandamus is the appropriate mechanism to review whether the trial court erred in sustaining a motion to compel arbitration. Four judges find that Mr. Hewitt's employment contract contained a valid and enforceable arbitration clause that required him to arbitrate disputes, including his statutory claims, against the Rams. Four judges also find that the National Football League's dispute resolution procedural guidelines setting out the essential terms of arbitration were not referenced in Mr. Hewitt's employment contract and, therefore, were not incorporated into his contract. Four judges

further find that the terms of the contract designating the NFL commissioner, an employee of the team owners, as the sole arbitrator with unfettered discretion to establish the rules for arbitration are unconscionable and, therefore, unenforceable. Four judges find that Missouri's uniform arbitration act provides a mechanism to imply the terms missing from the arbitration agreement and provides the rules for appointing an arbitrator to replace the NFL commissioner. Accordingly, four judges issue a permanent writ of mandamus directing the trial court to vacate its order granting the motion to compel arbitration and, instead, issue an order compelling arbitration wherein the trial court appoints a neutral arbitrator, implies the specific terms of arbitration from applicable statues in Missouri's uniform arbitration act, and directs the parties to proceed with arbitration.

## I. Factual and Procedural Background

The Rams are a professional football team affiliated with the NFL. Starting as a summer equipment department employee for the Rams during college, Mr. Hewitt joined the organization full time in 1978 and was promoted to equipment manager in 1985. He held that position until early 2011.

Mr. Hewitt entered into a number of employment contracts with the Rams during the more than 40 years he was employed by the team. In November 2008, he signed his most recent contract with the Rams. It covered the 2009-2010 and 2010-2011 NFL seasons. Like many of his prior employment contracts, this contract contained an arbitration clause that stated:

> Hewitt agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League and by the decisions of the Commissioner of the National Football League, which shall be final, binding, conclusive and unappealable. The Rams and Hewitt also

severally and mutually promise and agree that in any dispute which may arise between them, the matter in dispute shall be referred to the Commissioner of the National Football League for decision and after due notice and hearing, at which both parties may appear, the decision of said Commissioner shall be final, binding, conclusive and unappealable, and the Rams and Hewitt severally and jointly hereby release the Commissioner and waive every claim each or both have or may have against the Commissioner and/or the National Football League, and against every director, partner, officer, and stockholder of every Club in the National Football League, for all claims and demands whatsoever arising out of or in connection with any decision of the Commissioner of the National Football League.

The constitution and bylaws of the NFL further provided that "[t]he Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate."

In January 2011, then head coach Steve Spagnuolo notified Mr. Hewitt that his employment contract would not be renewed. At that time, Mr. Hewitt was 54 years old. In May 2012, Mr. Hewitt filed suit in the St. Louis County circuit court against the St. Louis Rams Partnership and three affiliated companies − The Rams Football Company, Inc., ITB Football Company, L.L.C., and The St. Louis Rams, L.L.C. − (collectively "the Rams") alleging age discrimination in violation of the Missouri Human Rights Act (MHRA), section 213.010 *et seq.*[1]

The Rams moved to compel arbitration and to dismiss or stay the court proceedings, citing the arbitration provision of Mr. Hewitt's employment contract. Mr. Hewitt opposed arbitration, arguing that the arbitration provision was invalid and unenforceable against him because: (1) three of the four defendants did not sign the agreement; (2) there was no meeting of the minds as to the essential terms of the arbitration agreement; (3) there was no consideration for the arbitration agreement; (4) the agreement does not contain a clear and

---

[1] All Missouri statutory references are to RSMo 2000, unless otherwise indicated.

unmistakable waiver of Mr. Hewitt's right to bring a statutory violation claim in court and several provisions of the arbitration agreement interfere with Mr. Hewitt's rights under the MHRA, barring arbitration under the "denial of statutory rights" doctrine; and (5) several provisions of the arbitration agreement are unconscionable, including the provision naming the NFL commissioner as the arbitrator.

The trial court granted the Rams' motion to compel arbitration and ordered that the court action be stayed pending the arbitration. After an unsuccessful attempt at an appeal,[2] Mr. Hewitt petitioned the court of appeals for a writ of mandamus or prohibition. The court of appeals issued a preliminary order in mandamus. After opinion, both parties sought, and were granted, transfer to this Court pursuant to article V, section 10 of the Missouri Constitution. On transfer, Mr. Hewitt asks this Court to issue a writ of mandamus preventing the trial court from compelling arbitration of this dispute.[3]

## II. Standard of Review and Issuance of Writ of Mandamus

This Court has the authority to "issue and determine original remedial writs," including the extraordinary writ of mandamus. *See* MO. CONST. art. V, sec. 4.1. This Court

---

[2] After ordering the noted referral to arbitration and a stay, the trial court also dismissed the case, apparently believing this would allow for immediate appeal of its ruling. Mr. Hewitt did appeal. The court of appeals did not reach the merits of the arbitration order at that time. Instead, it found the trial court's order simultaneously asserting jurisdiction by ordering arbitration to proceed and relinquishing jurisdiction by dismissing the case was "internally inconsistent." It reversed the dismissal order and reinstated the trial court's first order staying the court proceedings pending the outcome of arbitration. After remand, Mr. Hewitt filed his writ petition in the court of appeals. The propriety of the earlier proceedings during the appeal is not before this Court.

[3] Upon transfer, this Court "consider[s] the case the same as one that had been commenced as an original proceeding in this court." *State ex rel. Adrian Bank v. Luten*, 488 S.W.2d 636, 636 (Mo. banc 1973), *disapproved of on other grounds by State ex rel. Farmers Ins. Co., Inc. v. Murphy*, 518 S.W.2d 655, 664 (Mo. banc 1975).

4

recognized, in *State ex rel. Vincent v. Schneider* that a writ of mandamus is an appropriate mechanism to review whether a motion to compel arbitration was improperly sustained. 194 S.W.3d 853, 855 (Mo. banc 2006). A litigant seeking "relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Furlong Cos., Inc. v. City of Kansas City*, 189 S.W.3d 157, 166 (Mo. banc 2006). This right may arise from a statute that creates a right but does not explicitly provide mandamus as a remedy to enforce the right. *See State ex rel. JCA Architects, Inc. v. Schmidt*, 751 S.W.2d 756, 757 (Mo. banc 1988). Additionally, this Court will not issue a remedial writ "in any case wherein adequate relief can be afforded by an appeal." Rule 84.22(a).

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2006), governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce. Section 2 extends the scope of the FAA to any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Section 1 defines "commerce" as "commerce among the several States*.*" *Id.* § 1. The United States Supreme Court has construed this language broadly, stating:

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" − words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" − that is, "within the flow of interstate commerce."

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (internal citations omitted).

The Supreme Court further has held that the FAA applies even when, for example, an arbitration agreement is executed in a single state by residents of that state if one of the

5

parties to the agreement engages in business in multiple states. *Id.* at 57. It is undisputed that the Rams operate in interstate commerce; the team − its players and employees − participate in away games and take in revenue in other states, and several of the defendant corporations named in this suit are incorporated in Delaware. Mr. Hewitt's employment contract to provide equipment managerial services to the team as it was engaged in interstate commerce brings the contract within the purview of the FAA.[4]

Under the FAA, a party must submit to arbitration "save upon such grounds as exist at law or in equity for the revocation of any contract."[5] 9 U.S.C. § 2.[6] This Court and the Supreme Court have found the contract defenses Mr. Hewitt raises fall under the FAA's aforementioned savings clause. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. banc 2012). Mr. Hewitt has a clearly established right to arbitrate his claims using only those terms that are not

---

[4] The Missouri Uniform Arbitration Act (MUAA), section 435.350 *et seq.*, governs those arbitration matters not preempted by the FAA. This Court rejects Mr. Hewitt's argument that this matter is governed solely by the MUAA and not the FAA, but even were the FAA not applicable here, Missouri courts have recognized that the MUAA was "fashioned after the Federal Arbitration Act" and that "[t]he FAA and Missouri's Arbitration Act are substantially similar." *CPK/Kupper Parker Commc'ns, Inc. v. HGL/L. Gail Hart*, 51 S.W.3d 881, 883 (Mo. App. 2001).

[5] This right is replicated in MUAA. *See* section 435.350.

[6] Section 2 of the FAA states in relevant part:
> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*.

(Emphasis added).

6

unconscionable as determined using the general principles governing contract law in Missouri. *See Robinson*, 364 S.W.3d at 515.

Further, mandamus is an appropriate remedy when alternative remedies waste judicial resources or result in a burdensome delay, creating irreparable harm to the parties. *State ex rel. Sasnett v. Moorhouse*, 267 S.W.3d 717, 725 (Mo. App. 2008). If Mr. Hewitt is not bound to arbitrate under the terms of his contract, this Court can readily avoid this duplicative and unnecessary additional litigation through a writ of mandamus. To do otherwise would be result in a failure of judicial efficiency. Accordingly, there is no adequate remedy on appeal for the present claims. *See Vincent*, 194 S.W.3d 853. Here, as in *Vincent,* a writ of mandamus is the proper mechanism to review the grant of a motion to compel arbitration.

While this Court has held that inconvenient delay to the complaining party is not, in itself, a basis for the issuance of a writ of mandamus, the ruling was based on very different circumstances. *State ex rel. Kelley v. Mitchell*, 595 S.W.2d 261, 268 (Mo. banc 1980). In *Kelley*, the relators first sought declaratory judgment regarding the construction of a contested statute and, one day later, filed a writ of mandamus. *Id.* at 262-63. The Court found the writ of mandamus was an inappropriate attempted "short-cut" because there was "no reason to doubt that the relators would be able to receive full, prompt and adequate relief in the declaratory judgment action." *Id.* at 267. Mr. Hewitt has no immediate alternative remedy to his claim that the arbitration agreement is invalid. Additionally, the delay results in harm not only to the relator but also to both parties, who must needlessly

7

protract litigation and dispute resolution, and to the courts, which have already devoted considerable resources to litigate this issue.

Additionally, to the extent that it could be argued that prohibition rather than mandamus is the more appropriate writ, this Court has noted, "[T]he distinction between prohibition and mandamus is often elusive and sometimes only serves to create confusion for parties." *State ex rel. Unnerstall v. Berkemeyer*, 298 S.W.3d 513, 515-16 (Mo. banc 2009). *Unnerstall* notes that this confusion has led the court of appeals to hold that distinctions between the two types of writs are anachronistic and that, in modern practice, "[t]he distinction between mandamus and prohibition is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap to a great extent." *Id.* at 516 (internal citations omitted). For example, prohibition has also been used to prevent a waste of judicial resources through unnecessary, inconvenient and expensive litigation. *State ex rel. Springfield Underground, Inc. v. Sweeney*, 102 S.W.3d 7, 8-9 (Mo. banc 2003); *See also State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553 (Mo banc. 1994).

### III. Arbitration Clause is Valid and Enforceable

Mr. Hewitt asserts the arbitration provision is invalid and unenforceable on numerous grounds, including that it provides for a decision by an allegedly biased arbitrator, a lack of mutual agreement to the arbitration's essential terms, lack of consideration, lack of waiver of and a denial of his statutory rights, and allegations of procedural unconscionability. He also contends that the three named defendants that did not sign the employment contract cannot enforce the arbitration provision against him. Mr. Hewitt's claims of lack of consideration and procedural unconscionability relate to the validity of the agreement to

8

arbitrate, whereas his claims regarding the arbitrator and terms of arbitration relate to only specific terms of arbitration. Accordingly, the Court will address these claims separately. The Court will also address separately Mr. Hewitt's arguments that he did not waive his right to bring his statutory claim in a judicial forum and that the defendants who did not sign the contract cannot enforce it because those arguments involve whether the arbitration agreement encompasses his underlying claims.

## A. The Court May Determine Whether the Arbitration Agreement is Valid

As previously discussed, Mr. Hewitt's employment contract is governed by the FAA. The Supreme Court stated in *Concepcion* that the FAA reflects a "liberal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. . . . [C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." 131 S. Ct. at 1745 (internal citations and quotation marks omitted).

If there is no valid arbitration clause, however, then there is no agreement to arbitrate, and the case may proceed in civil court. *See* 9 U.S.C. § 2. A court determines the validity of an arbitration agreement by applying state contract law principles. *Vincent*, 194 S.W.3d at 856. In *Brewer v. Missouri Title Loans*, this Court reaffirmed that *Concepcion* did not diminish a trial court's broad authority to evaluate the validity and enforceability of arbitration agreements prior to granting or denying a motion to compel arbitration and, so, "permit[s] state courts to apply state law defenses to the formation of the particular contract at issue." 364 S.W.3d 486, 492 (Mo. banc 2012). This provision means that, prior to referral to arbitration, a Missouri court can declare an arbitration agreement "unenforceable

9

if a generally applicable contract defense, such as fraud, duress, or unconscionability, applie[s] to concerns raised about the agreement."[7] *Robinson*, 364 S.W.3d at 515 (Mo. banc 2012); *see also Brewer*, 364 S.W.3d at 492 n.3.

Mr. Hewitt concedes that his employment contract included an arbitration provision, and the trial court found that a similar arbitration provision had been included in many of the previous employment contracts he signed with the Rams over the prior 40 years. This provision is treated like any other contract and is enforced according to its terms. *See Concepcion*, 131 S. Ct. at 1745. The terms of a contract are to be read "as a whole to determine the intention of the parties," giving the terms "their plain, ordinary, and usual meaning." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). According to the plain language in his contract with the Rams, Mr. Hewitt intended to be legally bound by the constitution and bylaws of the NFL, which provided that his disputes would be arbitrated.

## B. Arbitration Clause is Supported by Valid Consideration

Despite executing an agreement to arbitrate, Mr. Hewitt asserts the agreement is not valid for lack of consideration. Specifically, he claims a lack of consideration on the basis that both contracting parties were not bound by the arbitration agreement. As Mr. Hewitt

---

[7] While the ultimate issue simply is whether a contract or a term of the contract is unconscionable, in making this determination, Missouri courts examine both the procedural aspects of contract formation and the substantive provisions of the contract. *Vincent*, 194 S.W.3d at 858. "Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself." *Id.* "Procedural unconscionability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process" while "[s]ubstantive unconscionability means an undue harshness in the contract terms." *Id.*

notes, the first sentence of the provision states only that "Hewitt agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League and by the decisions of the Commissioner of the National Football League, which shall be final, binding, conclusive and unappealable."

But the arbitration provision does not end there. The following sentence states, "The Rams and Hewitt also severally and mutually promise and agree that in any dispute which may arise between them, the matter in dispute shall be referred to the Commissioner of the National Football League for decision . . .." In this second sentence, the Rams expressly promise to arbitrate any and all disputes before the commissioner. Both the Rams and Mr. Hewitt signed and are bound by this agreement. The trial court found that the Rams' agreement with the NFL stated that they, as members of the league, would be bound by the constitution and bylaws, which expressly refer to the commissioner's authority to arbitrate. While, as Mr. Hewitt notes, legal questions could arise as to the meaning of some of these constitutional provisions or bylaws, he has not demonstrated that a fact question exists as to the content of these provisions or as to the fact that those provisions say that NFL teams must comply with their terms.

The record supports the trial court's explicit finding that the constitution and bylaws "already bind the St. Louis Rams Partnership, [but] Mr. Hewitt must separately agree to be bound." Mr. Hewitt cites no cases that would have required the Rams to expressly reaffirm their NFL membership agreement obligations in each individual employment contract they sign when, as here, the individual employment contract requires that arbitration be determined by the commissioner and governed by the NFL constitution and bylaws.

11

Indeed, the language of the arbitration agreement signed by Mr. Hewitt and the Rams distinguishes this case from the two cases cited by Mr. Hewitt in which arbitration agreements in NFL employment contracts were found to lack consideration. *Sniezek v. Kansas City Chiefs Football Club*, 402 S.W.3d 580 (Mo. App. 2013), and *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503 (Mo. App. 2013). In those agreements, the employees alone promised to be bound by the constitution and bylaws of the NFL and to refer disputes to the commissioner for arbitration. The Chiefs did not, as the Rams do here, promise to arbitrate disputes before the commissioner, nor did they sign the agreements at issue in *Sniezek* and *Clemmons*. By contrast, Mr. Hewitt's employment contract was signed by and is binding on both Mr. Hewitt and then Rams' president and general manager, Jay Zygmunt. Therefore, Mr. Hewitt's argument that the agreement lacked consideration fails.

### C. No Procedural Unconscionability

Mr. Hewitt contends the agreement should not be enforced because the conditions under which he renewed his employment contract were unconscionable. Specifically, he asserts the contract was presented "in a hurried way without any discussion of [the contract's] terms." This argument is undermined by Mr. Hewitt's own long, more than 40 year tenure as a Rams employee, during which time the trial court found he had signed many employment contracts containing arbitration provisions substantially similar to this one.[8] As the trial court stated, "If Mr. Hewitt did not read his contract, inquire about its

_____

[8] Although Mr. Hewitt's reply brief notes that his affidavit admitted only to signing multiple employment contracts with the Rams, it was his burden to show that the arbitration provision was unconscionable because he did not have time to consider the provision before

12

terms or ask for supporting documents during those decades, the [c]ourt is not able to turn back the hands of time and shield him from his own contractual promises."

Mr. Hewitt also argues that the take-it-or-leave-it basis of the agreement makes it an adhesion contract. He concedes, however, that he did not attempt to negotiate the terms of his contract, except on one occasion as to an earlier contract for which he provides no further information as to his success or failure. Mr. Hewitt's conclusory allegations that he was unable to alter the terms of his contract and that there was disparity in the parties' bargaining power do not prove themselves, nor would they make the agreement unconscionable. *See Vincent*, 194 S.W.3d at 857 (failure to negotiate does not "prove the negative" that one could not have done so).

Rather, as this Court made clear in *Robinson,* lack of negotiation and the adhesive nature of a contractual agreement are factors to consider in determining unconscionability, but "post-*Concepcion*, a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally." 364 S.W.3d at 515. "Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *see also Brewer*, 364 S.W.3d at 495; *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. App. 2003). Mr. Hewitt does not allege that he "was coerced or defrauded into agreeing to the arbitration clause," *Gilmer*, 500 U.S.

---

being forced to sign this or the prior Rams contracts, and he failed to present any facts countering the Rams statement that it can show that many of his earlier contracts contained similar clauses.

13

at 33, particularly after decades of signing such agreements. He further offers no other explanation of why the disparity in bargaining power should invalidate the contract in the absence of evidence that the Rams abused their power.

Under the plain language of the employment contract between Mr. Hewitt and the Rams, Mr. Hewitt agreed to arbitrate his disputes against the Rams. The agreement is supported by consideration and obligates both parties to arbitrate. Further, Mr. Hewitt does not show that the circumstances under which the contract was entered into were so unconscionable as to render the agreement invalid. Therefore, there is a valid and enforceable agreement to arbitrate.

## IV. Terms of Arbitration

Next, Mr. Hewitt asserts that the arbitration agreement is invalid and unenforceable because there was no mutual agreement to the essential terms of arbitration. The arbitration provision in Mr. Hewitt's employment contract states:

> Hewitt agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League and by the decisions of the Commissioner of the National Football League, which shall be final, binding, conclusive and unappealable . . ..

The constitution and bylaws of the NFL further provide:

> The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate[.] . . . The Commissioner shall interpret and from time to time establish policy and procedure in respect to the provisions of the Constitution and Bylaws and any enforcement thereof.

In its order compelling arbitration, the trial court found that the NFL dispute resolution procedural guidelines governed the arbitration procedure and that both parties were bound by the guidelines. Mr. Hewitt acknowledges that the arbitration provision

14

clearly states he will be bound by "the Constitution and By-Laws and Rules and Regulations" of the NFL but contends he did not have sufficient information to make him aware of the full provisions of his employment contract because it does not directly mention the guidelines or attach them. Similarly, Mr. Hewitt asserts that the reference to the commissioner's authority to interpret and establish policy does not reference the terms found in the guidelines with any amount of specificity that would enable him to assent to these terms. Mr. Hewitt stated in his affidavit that he did not know of the existence of the guidelines until the Rams sought to compel him to arbitrate his age discrimination claim.

A valid arbitration clause in an employment contract requires mutuality of agreement, which "implies a mutuality of assent by the parties to the terms of the contract." *Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.*, 925 S.W.2d 932, 938 (Mo. App. 1996). Terms not explicit in a contract may be incorporated into the contract by reference. *Dunn Indus. Grp.*, 112 S.W.3d at 435 n.5. The intent to incorporate must be clear. *See St. Louis Union Trust Co. v. Blue*, 353 S.W.2d 770, 777 (Mo. 1962). To incorporate terms from another document, the contract must "make[] clear reference to the document and describe[] it in such terms that its identity may be ascertained beyond a doubt." *Intertel, Inc. v. Sedwick Claims Mgmt. Servs., Inc.*, 204 S.W.3d 183, 196 (Mo. App. 2006).

### A.  Guidelines Not Incorporated Into Contract

The guidelines were not referenced in Mr. Hewitt's employment contract, nor were they clearly referenced in the constitution and bylaws. Mr. Hewitt's employment contract only refers to "Rules and Regulations of the National Football League." This reference does not identify the guidelines in such a way that Mr. Hewitt could ascertain them beyond

15

doubt. At best, under the terms of the constitution and bylaws, Mr. Hewitt agreed to arbitrate by undefined terms that the commissioner would establish. But these terms also lack certainty; Mr. Hewitt had no way to identify these terms and had no way to know that the NFL intended the guidelines to govern arbitration proceedings. Given the ambiguity of any terms actually referenced, Mr. Hewitt could not assent to them.

Moreover, Mr. Hewitt did not bear the burden to seek out an unknown document not clearly identified in his employment contract or the constitution and bylaws. Though the NFL and the Rams may have intended to incorporate the guidelines into the constitution and bylaws and the employment contract, respectively, it is a well-settled rule that "[i]f ambiguous, [a contract] will be construed against the drafter." *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005). The Rams had the burden to incorporate the terms in such a way that Mr. Hewitt could manifest his consent. Having failed to do so, Mr. Hewitt did not assent to the essential terms of arbitration found in the guidelines. Though Mr. Hewitt agreed to arbitrate disputes against the Rams, the specific terms of arbitration are, therefore, unenforceable.[9]

### B. Arbitration Terms Implied from Statute

Mr. Hewitt argues that the failure of the parties to agree to the specific terms of arbitration invalidates the arbitration clause in his employment contract. This Court has analyzed the validity of specific provisions of the arbitration agreement independently from the validity of the overall agreement to arbitrate. *See Vincent*, 194 S.W.3d at 855-58

---

[9] Mr. Hewitt argues that a number of the rules of arbitration set out in the guidelines are unconscionable. Because Mr. Hewitt is not bound to arbitrate under the terms in the guidelines, this Court need not consider whether they are unconscionable.

(determining first "whether the parties have entered a valid agreement to arbitrate," then whether arbitration provisions were unconscionable). As previously discussed, the agreement to arbitrate is valid because the plain language in his contract demonstrates that Mr. Hewitt intended to be legally bound by the constitution and bylaws of the NFL, which provided that his disputes would be arbitrated.

When an arbitration agreement is valid, but specific provisions are silent or unconscionable, the failure of the terms is remedied by implying the terms from statutes within the Missouri Uniform Arbitration Act (MUAA), section 435.350 *et seq*. *Triarch Indus.*, 158 S.W.3d at 775; *Vincent*, 194 S.W.3d at 859-61. Specifically, "where an agreement is silent as to certain necessary matters concerning the arbitration, such as how arbitrators will be appointed, arbitrators' right to exercise authority, notification of their award, and payment of fees and expenses, Missouri will imply such terms." *Triarch Indus.*, 158 S.W.3d at 775. And when provisions in an arbitration agreement fail due to unconscionability, the court will imply the terms by statute. *Vincent*, 194 S.W.3d at 859-61. Consequently, the failure of the arbitration terms set out in the guidelines does not make the agreement to arbitrate unenforceable but will require that those terms be implied by statute.

**V. Appointment of the Commissioner as Sole Arbitrator is Unconscionable**

Mr. Hewitt further contends the arbitration agreement is unconscionable because it designates the commissioner as the arbitrator of any disputes arising between Mr. Hewitt and the Rams. That provision states:

> The Rams and Hewitt also severally and mutually promise and agree that in any dispute which may arise between them, the matter in dispute shall be referred to the Commissioner of the National Football League for decision and

17

after due notice and hearing, at which both parties may appear, the decision of said Commissioner shall be final, binding, conclusive and unappealable . . ..

The provision further states that Mr. Hewitt "agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League."

The latter documents include the following language:

Jurisdiction to Resolve Disputes

8.3  The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate:
….
(B) Any dispute between any player, coach, and/or other employee of any member[10] of the League (or any combination thereof) and any member club or clubs . . ..

Mr. Hewitt argues that the commissioner cannot be neutral and unbiased in a dispute between an employee and a team's management because the commissioner is selected and his salary determined by the team owners.[11]  Section 8.1 of the constitution and bylaws states:

The League shall select and employ a person of unquestioned integrity to serve as Commissioner of the League and shall determine the period and fix the compensation of his employment.  All voting requirements and procedures for the selection of or successor to the office of Commissioner shall be determined by the affirmative vote of not less than two-thirds or 18, whichever is greater, of the members of the League.

The following provision, section 8.2 titled "Independence," states, "The Commissioner shall have no financial interest, direct or indirect, in any professional sport."

---

[10] Section 2.1(A) of the NFL's constitution and bylaws defines "member" as "an owner of a professional football club located in the United States."
[11] Mr. Hewitt also argues that, by extension, the hearing officers the commissioner is authorized by the guidelines to designate in his place as arbitrator cannot be impartial. Because the parties are not bound by the terms in the guidelines, this Court only considers the commissioner's neutrality as the arbitrator.

18

As previously discussed, prior to referral to arbitration, Missouri courts can evaluate unconscionability claims, including claims of actual arbitrator bias, under state law in the context of contract formation, looking at the contract or arbitration agreement as a whole to see whether the agreement to arbitrate is valid. *Brewer*, 364 S.W.3d at 492 n.3. A court must assess the applicability of a state law contract defense under section 2 of the FAA on a "case-by-case" basis, rather than imposing a blanket rule. *Brewer*, 364 S.W.3d. at 491; *see also id.* at 492 ("The question of whether a state law unconscionability defense [is preempted by the FAA] requires analysis of the particular facts of the case").

## A. Designation of NFL Commissioner as Arbitrator is Unconscionable

Based on the facts of the present case, the terms in the contract designating the commissioner, an employee of the team owners, as the sole arbitrator with unfettered discretion to establish the rules for arbitration are unconscionable and, therefore, unenforceable. The constitution and bylaws provide that the "League" consists of the team owners. Under the constitution and bylaws, the league "shall select and employ" the commissioner and set his or her term of employment and compensation. The constitution and bylaws also provide unequivocally that the commissioner is employed by the league; i.e., the team owners.

In effect, then, the commissioner is required to arbitrate claims against his employers. In *Vincent*, this Court found unconscionable a provision in an arbitration contract between a home builder and home purchasers that designated the president of a home builders association as the sole selector of the arbitrator because it found the president of the home

19

builders association was "an individual in a position of bias."[12]  194 S.W.3d at 859.  Like the president of the home builders association in *Vincent*, the designated arbitrator, the commissioner, is an individual in a position of bias as the arbitrator.

Additionally, due to the lack of any terms in the employment contract or in any document incorporated into the contract, the contract appoints the commissioner as not only the arbitrator but as the person who controls virtually every aspect of the arbitration from establishing the rules and procedures to making the final decision.  Those provisions in the arbitration agreement are unconscionable.  *Id.*

## B.  Replacement for Arbitrator Provided for by Statute

The unconscionability of the terms regarding the arbitrator does not invalidate the entire agreement to arbitrate.  *Vincent*, 194 S.W.3d at 859-61.  Instead, those unconscionable terms are replaced by the relevant provisions in the MUAA.  *Id.*  The MUAA provides for substitution of a new arbitrator when the designated arbitrator is disqualified.  Section 435.360.  This provision may be used to appoint a substitute arbitrator.

## VI.  Arbitration Clause Encompasses Mr. Hewitt's Underlying Claim Against All Defendants

Lastly, Mr. Hewitt makes two claims involving the enforcement of the arbitration agreement to compel arbitration of his underlying MRHA claim.  Specifically, he asserts he did not waive a judicial forum for his statutory claim under the MHRA and that the

---

[12] In *Vincent*, the president of the home builders association was also the president of the company that was a party to the arbitration agreement.  194 S.W.3d at 859.  The Court did not base its holding on this fact, however.  Rather, the Court expressly found, "Even if the president of the Home Builder[s] Association of Greater St. Louis was not also the president of [the company that was a party to the arbitration agreement], this portion of the arbitration provision would be unconscionable."  *Id.*

arbitration agreement cannot be enforced by the three named defendants who did not sign the employment contract.

## A. Arbitration Clause Waives a Judicial Forum for Statutory Claims

Mr. Hewitt asserts he did not waive a judicial forum for his claim that he was fired in violation of the MHRA because the arbitration agreement language does not include statutory claims. He is incorrect. Under Missouri law, "[i]f a contract is unambiguous, the intent of the parties is to be discerned from the contract alone based on the plain and ordinary meaning of the language used." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. banc 2012) (internal quotations omitted). The agreement at issue here mandates arbitration of "any dispute which may arise" between Mr. Hewitt and the Rams. "Any dispute" plainly means any dispute, including Mr. Hewitt's statutory claims under the MHRA. Mr. Hewitt's efforts to characterize this language as too ambiguous to be inclusive of statutory claims are unavailing.[13]

---

[13] The primary case cited by Mr. Hewitt is a Massachusetts case that is distinguishable both on the facts and on the governing law. In *Warfield v. Beth Israel Deaconess Medical Center., Inc.,* the Massachusetts court stated that Massachusetts law requires that an agreement to arbitrate statutory claims must be "clear and unmistakable." 910 N.E.2d 317, 325 (Mass. 2009), *abrogated on other grounds, Joule, Inc. v. Simmons*, 944 N.E.2d 143, 150 n.9 (Mass. 2011). The court found the term "arising out of or in connection with [the employment agreement] or its negotiations" to be ambiguous and, ultimately, determined that the employee's sex discrimination claim was not covered by the arbitration clause. *Id.* at 327-28. The language at issue in the instant case is distinguishable and is unambiguous. It, therefore, is enforceable under Missouri law. The other cases Mr. Hewitt cites for this proposition concern waiver requirements under collective bargaining agreements – a separate strand of legal precedent and one not directly applicable here.

### B. Non-signatory Defendants Can Enforce the Arbitration Agreement Against Mr. Hewitt

Mr. Hewitt asserts that defendants ITB Football Company, L.L.C., the Rams Football Company, Inc., and the St. Louis Rams, L.L.C., cannot enforce the arbitration agreement against Mr. Hewitt because, of the four named defendants, only the St. Louis Rams Partnership was a signatory to the agreement. This Court previously has rejected enforcement of an arbitration agreement against a signatory by a non-signatory on grounds that "arbitration is ultimately a matter of agreement between the parties." *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 361-62 (Mo. banc 2006). But *Netco* observed, as have the federal courts, that "a non-signatory may, in some instances, compel a signatory to arbitrate under the theory that the plaintiff/signatory is estopped from refusing to arbitrate." *Id.* at 361.

*Dominium Austin Partners, L.L.C. v. Emerson* provides an example of a situation like the present one in which all parties are properly referred to arbitration. 248 F.3d 720 (8th Cir. 2001). In *Emerson*, the court stated that all parties may arbitrate where "appellants made allegations which treat all these parties [signatories and non-signatories] as though they were signatories to the agreements." *Id.* at 728. Similarly, *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.*, held that a signatory plaintiff could not avoid enforcement when the plaintiff treated signatory and non-signatory defendants as a "single unit." 198 F.3d 88, 98 (2d Cir. 1999). *See also Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475 (11th Cir. 2012); *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005).

The principles set out in these cases apply here. Mr. Hewitt's petition makes no differentiation between the signatory and non-signatory defendants, referring to them collectively as "the Rams" or "Defendants" and alleging they fired him despite his contract due to age discrimination, stating, "Defendants, by *their* actions and failures to act, . . . discriminated against Mr. Hewitt on the basis of his age in violation of the Missouri Human Rights Act" (emphasis added). In other words, he alleges that each is responsible for the single act of firing him due to age while he was under contract. If the other defendants (two of whom are partners in the Rams partnership) were not bound by the contract, including the agreement to arbitrate, then Mr. Hewitt has failed to state any basis on which these non-signatory defendants employed him or could be liable for his firing. Mr. Hewitt cannot treat these defendants severally for arbitration purposes but jointly for all other purposes. His claim against the defendants is a single one that should be referred in its entirety to arbitration.

## VII.  Permanent Writ of Mandamus to Issue

### A.  Writ of Mandamus

Because Mr. Hewitt agreed to arbitrate his disputes with the Rams in his contract, the arbitration clause in Mr. Hewitt's contract is valid, and Mr. Hewitt is legally bound to arbitrate his dispute with the Rams. Additionally, this agreement encompasses his statutory claim against all four defendants in the underlying action. Nevertheless, Mr. Hewitt did not mutually assent to the specific terms of arbitration set forth in the guidelines, and the contract terms regarding the designation of the commissioner as the sole arbitrator with the power to unilaterally set the rules of arbitration are unconscionable. Mr. Hewitt is,

23

therefore, not bound to arbitrate his claims using the terms found in the guidelines and with the commissioner appointed as the sole arbitrator, who establishes the rules of arbitration. The failure of the arbitration terms set out in the guidelines does not make the agreement to arbitrate unenforceable but will require that those terms be implied by statute.

Because Mr. Hewitt should not be compelled to arbitrate his claims using the terms in the guidelines and with the commissioner appointed as the sole arbitrator and because no adequate remedy exists on appeal, a permanent writ of mandamus should issue.

## B. Directions to Trial Court

This Court directs the trial court to vacate its order granting the motion to compel arbitration using the arbitration terms set forth in the guidelines and then issue an order to compel arbitration whereby the trial court appoints a neutral arbitrator, *see* section 435.360, implies the specific terms of arbitration from applicable statutes in MUAA, *see* sections 435.350 to 435.470, and directs the parties to proceed with arbitration.

Russell, C.J., Breckenridge and Draper, JJ., concur;
Stith, J., concurs in part and dissents in part in separate
opinion filed; Teitelman, J., concurs in part and dissents
in part in separate opinion filed; Fischer, J., dissents in
separate opinion filed; Wilson, J., concurs in opinion of
Fischer, J.; Wilson, J., dissents in separate opinion filed.



# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. TODD HEWITT,    )
    )
          **Relator,**    )
    )
v.    )    **No. SC93846**
    )
HONORABLE KRISTINE KERR,    )
JUDGE, CIRCUIT COURT FOR    )
ST. LOUIS COUNTY, MISSOURI,    )
    )
          **Respondent.**    )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur in the per curiam's holding in Section II that a writ of mandamus is the appropriate mechanism to review whether the trial court erred in sustaining the motion to compel arbitration, and with its holding in Section III that the arbitration agreement is valid. I dissent from the per curiam's holding in Section V.A. that the National Football League (NFL) commissioner is presumptively biased and in Section IV.A. that the NFL Dispute Resolution Guidelines have not been agreed to by the parties. But I concur in the per curiam's holding in Section IV.B. and V.B. that where, as here, a majority holds that the arbitrator is disqualified and that the parties have not agreed on the terms governing arbitration, the Missouri Uniform Arbitration Act (MUAA), *§§ 435.350 to 435.470, RSMo 2000*, provides mechanisms for appointing a substitute arbitrator and for providing

substitute terms governing arbitration.  Accordingly, I concur in the per curiam's holding in Section VII.B.

## I.  A WRIT OF MANDAMUS IS THE APPROPRIATE PROCEDURE

Addressing first the issue of whether the writ petition is properly considered by this Court now, I reject Judge Fischer's argument in his dissenting opinion that a writ of mandamus should not be used to consider the propriety of granting a motion to compel arbitration.  In *Lawrence v. Beverly Manor, 273 S.W.3d 525, 529 (Mo. banc 2009)*, this Court expressly held that a party cannot be forced to arbitrate a dispute in the absence of a valid agreement to do so.  This Court also recently has reaffirmed that it is the trial court, not the arbitrator, that determines whether the parties have signed a valid agreement to arbitrate.  *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 (Mo. banc 2012).  These cases make clear the inadequacy of the dissent's proposition that a case should be sent to arbitration first, and only after the fact should the courts review whether the agreement to arbitrate was valid.  That is the proverbial putting of the cart before the horse.  If there was no agreement to arbitrate, then requiring a party to go through arbitration before trying the case would deny that party his or her recognized right to try the case before the courts.[1]

---

[1] Arguably it also would violate the open courts provision of article I, section 14 of Missouri's constitution.  A valid arbitration clause does not violate that guarantee because it is contractually agreed to and because suit may be filed prior to the arbitration. *See State ex rel. Cardinal Glennon Mem'l Hosp. for Children v. Gaertner, 583 S.W.2d 107, 110 (Mo. banc 1979)*.  But, when there is no agreement to arbitrate, compelling the plaintiff first to go through arbitration could well be considered to be an arbitrary precondition to trying his or her case in the courts, in violation of the open courts provision.

*II.* *NFL COMMISSIONER SHOULD NOT BE FOUND PRESUMPTIVELY BIASED AND NFL DISPUTE RESOLUTION GUIDELINES ARE PROPER*

I disagree with the per curiam's holdings in Sections IV.A. and V.A. that the NFL guidelines have not been agreed to by the parties as governing the arbitration here and that the NFL commissioner should be disqualified as an arbitrator. Accordingly, I believe that the better course would be to direct the trial judge simply to refer this matter for arbitration under the contract as written. But I agree with the per curiam's holding in Sections IV.B. and V.B. that if the chosen arbitrator is disqualified, or if the terms governing the arbitration are not set out in the agreement to arbitrate, then the missing terms can be supplied by the MUAA and, pursuant to the MUAA, another arbitrator may be appointed. *See §§ 435.350 to 435.470*; *State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 861 (Mo. banc 2006).* Therefore, because a majority of the Court determines that the arbitrator should be disqualified and that the NFL guidelines do not govern the arbitration, I concur in the per curiam's holding in Section VII.B. that a writ should issue on the terms set out in the majority opinion.

*A.* *The NFL Commissioner Should not be Disqualified in Advance of Arbitration*

The per curiam holds in Section V.A. that the NFL commissioner is an employee of the various NFL teams and that, as a result, he inherently is not neutral and cannot serve as an unbiased arbitrator in a dispute between an employee and an NFL team. The per curiam is the first and only decision in the entire country to so hold based simply on the fact that the NFL commissioner is, well, the NFL commissioner.

The Federal Arbitration Act (FAA) does not contain a provision authorizing

3

advance disqualification of an arbitrator for inherent bias. The FAA instead provides for judicial vacation of an arbitration award "where there was evident partiality or corruption in the arbitrators." *9 U.S.C. § 10(a)(2).* The MUAA similarly provides that "the court shall vacate an award where: … There was evident partiality by an arbitrator appointed as a neutral …." *§ 435.405.1(2).* These provisions by their nature require that the arbitration occur first, and review for evident bias or partiality occur later in court. They entitle Mr. Hewitt to seek judicial review of any arbitration award *if* he believes the commissioner or his designee shows evident bias or partiality in considering his employment discrimination claim.

This review is adequate to protect the parties to an arbitration in all but cases in which actual bias or an actual conflict of interest is shown before the fact. For the same reasons that I would not wait until after arbitration to determine whether the parties have agreed to arbitration, I agree with the per curiam that it would be pointless to wait until after arbitration to disqualify an arbitrator who was shown to be actually biased or to have an actual conflict of interest. Actual bias or an actual conflict inevitably would result in voiding of the result of the arbitration, and delaying that determination would be pointless.

Here, however, Mr. Hewitt concedes that he has not alleged or shown actual bias, and no evidence of actual bias was presented. Instead, he asks that this Court simply assume that no NFL commissioner could be unbiased and to disqualify the NFL

4

commissioner under the common law bar on unconscionability.[2] The per curiam accepts Mr. Hewitt's invitation to so hold. I believe this is error.

A comparison of the facts of this case to those in the case relied on by the per curiam, *Vincent*, provides a good example of why disqualification in advance is not required here. In *Vincent*, the president of a home building company who also was president of the local home builders' association was designated as the sole selector of the arbitrator in any dispute between a home builder and a home purchaser. This Court found an actual conflict of interest and, therefore, inherent bias on those facts because, as the president of the home builders' association, he was "an individual in a position of bias." *Id. at 859*. The per curiam says that the NFL commissioner similarly is an individual in a position of bias because he is an "employee" of the NFL teams. That analogy is too simplistic.

The person who selected the arbitrator in *Vincent* was the president of a home builders' association. The person selected as arbitrator under the arbitration clause at issue here is not the president of the Rams, however, or of any other NFL team. He is the NFL commissioner. Not only is the NFL commissioner not the owner of the Rams or another NFL team, the NFL commissioner does not exclusively represent the interests of

---

[2] While the ultimate issue simply is whether a contract or a term of the contract is unconscionable, in making this determination Missouri courts examine both the procedural aspects of contract formation and the substantive provisions of the contract. "Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself." *Vincent, 194 S.W.3d at 858* (noting further that "[p]rocedural unconscionability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process" while "[s]ubstantive unconscionability means an undue harshness in the contract terms").

5

the team owners.  He is hired and employed by the NFL, not by the owners individually or collectively. Unlike the president of an association made up of and representing only home builders, here the NFL commissioner is required by the NFL rules to be "a person of unquestioned integrity," and section 8.2 of the NFL constitution requires that the commissioner "shall have no financial interest, direct or indirect, in any professional sport."  Further, the NFL commissioner is required to serve as arbitrator *between* NFL teams as well as between employees and between NFL owners and their players or other employees.  This specifically includes disputes in which the NFL commissioner is required to take a position adverse to one or more owners, such as in disputes among two or more owners of the same team or among the owners of different teams.  *NFL Const. § 8.3*.  Neither the owner of the Rams nor the owner of any other team can have the NFL commissioner fired for not coming to the decision the owner wished.  Two-thirds of the members of the NFL must vote to fire the commissioner and select a successor.  *NFL Const. § 8.1*.

The NFL commissioner's position, therefore, is far more removed from the Rams and their ownership than was the home builders' association president who was to select the arbitrator in *Vincent*.  Moreover, unlike in *Vincent*, this Court has before it examples of prior cases in which the NFL commissioner has been selected as arbitrator, and in *none* has he been found to be inherently biased.  In fact, in each case in which his disqualification has been sought solely on the basis of his position as NFL commissioner,

that request for disqualification has been denied – until now.[3]  Actual bias or a conflict of interest always has been required.[4]

Mr. Hewitt concedes in his brief and at argument that the NFL commissioner might be able to be fair as to players or others with superior bargaining power personally or by dint of their union membership.  But, Mr. Hewitt says, because he does not have the benefit of such resources, bias should be presumed for him and other non-player, non-union employees.

There are at least two problems with this argument.  First, the existence or absence of inherent bias is a separate question from that of an employee's bargaining power;

---

[3] The persuasiveness of Mr. Hewitt's citation to *Dryer v. Los Angeles Rams Football Co., Inc., 198 Cal. Rptr. 497 (Cal. Ct. App. 1984)*, is limited by the fact that it was vacated by the California Supreme Court in *Dryer v. Los Angeles Rams, 709 P.2d 826 (Cal. 1985)*, and is of no precedential value.  Mr. Hewitt attempts to resuscitate the court of appeals' decision by suggesting that the case was vacated on other grounds (i.e., if the commissioner actually had been designated to arbitrate Dryer's dispute, rather than being named only as the potential arbitrator in a narrow set of circumstances that did not arise in Dryer's case, the high court would have found the agreement unconscionable), but the California Supreme Court's opinion does not so state.  Rather, it vacated the lower court's decision, in part, because it "invalidated an entire arbitration procedure because of a *purely speculative possibility* that the commissioner might have the power, at some point, to withdraw the dispute from the normal arbitration process," and it declined to take a position on the validity of the arbitration agreement had a different set of facts been before it.  *709 P.2d at 833* (emphasis added).  The fact that the California court was unwilling to set aside an arbitration agreement when the attack on the agreement was based on speculation rather than evidence does more to undermine Mr. Hewitt's argument than to support it.

[4] *Morris v. New York Football Giants, Inc., 575 N.Y.S.2d 1013, 1016-17 (N.Y. Sup. Ct. 1991)*, held that the then-commissioner was deprived of "the necessary neutrality to arbitrate these claims" because he had previously served as chief outside counsel for the NFL and its members and, in that capacity in a prior case, had advocated a position directly at odds with that advanced by the players in the dispute at issue.  Again, the court's decision was based on evidence of actual bias.  It bears repeating that Mr. Hewitt has to this point offered no evidence of actual bias here.

while bargaining power may help keep existing bias in check, the arbitrator is either inherently biased or he is not. No case cited supports the adoption of the two-tiered bias analysis Mr. Hewitt proposes.

Second, even were the Court to agree that a two-tiered approach might be proper when a plaintiff showed that arbitrators of the type designated had shown bias in the past as to the group of employees of which the plaintiff was a part, it would be a factual question, and there was no such showing here. Mr. Hewitt has offered only speculation. Mr. Hewitt cites no evidence of the current NFL commissioner's bias against employees and cites no legal authority for his claim that this or any other sports commissioner is inherently biased or has exhibited bias based solely on the commissioner's position as commissioner. I reject a presumption of bias.

I find much more persuasive the cases from other jurisdictions that have specifically rejected similar pre-award claims of potential bias on the part of an NFL commissioner. In *Alexander v. Minnesota Vikings Football Club LLC, 649 N.W.2d 464, 467 (Minn. Ct. App. 2002)*, the Minnesota court of appeals declined to find the commissioner to be a biased arbitrator prior to the issuance of an arbitration award, observing at the outset that "the FAA does not expressly provide for the pre-award removal of an arbitrator." *Alexander* adopted the Second Circuit's reasoning in *Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 895, 896 (2d Cir. 1997)*, which, in interpreting the FAA, stated that "an agreement to arbitrate before a particular arbitrator may not be disturbed, unless the agreement is subject to attack under general contract principles," such as when "the arbitrator's relationship to one party was undisclosed, or unanticipated

8

and unintended, thereby invalidating the contract."

When a party agreeing to arbitration is fully aware at the time of contract formation of the identity of the arbitrator and his relationship with the other party (as Mr. Hewitt was fully aware through the current contract and from many earlier contracts that the NFL commissioner would serve as arbitrator of any dispute arising between him and the Rams), *Aviall* determined he can "hardly object" to the enforcement of the arbitration agreement "according to its terms." *Id. at 896*; *see also Hojnowski v. Buffalo Bills, Inc., 995 F. Supp. 2d 232, 239 (W.D.N.Y. 2014)* (also relying on *Aviall* to compel arbitration over objections that the NFL commissioner's inherent bias rendered the arbitration agreement unconscionable).

As noted above, to enforce the arbitration agreement as written would not leave Mr. Hewitt without a remedy. Mr. Hewitt has an adequate mechanism for judicial review of the result of the arbitration and may be afforded relief under the FAA and MUAA should the arbitrator show evident bias. *See 9 U.S.C. § 10(a)(2)*; *§ 435.405.1(2).*

### B. NFL Dispute Resolution Guidelines

I also disagree with the per curiam's holding in Section IV.A. that the arbitration agreement fails to incorporate or adequately identify the essential terms of arbitration. The arbitration provision in Mr. Hewitt's employment contract states:

> Hewitt agrees to abide by and to be legally bound by the *Constitution and By-Laws and Rules and Regulations* of the National Football League and by the decisions of the Commissioner of the National Football League, which shall be final, binding, conclusive and unappealable ….

(Emphasis added.) The per curiam contends that, because this provision does not directly

9

mention the NFL Dispute Resolution Procedural Guidelines or incorporate them by reference or attach them, Mr. Hewitt did not have sufficient information to make him aware of the full provisions of his employment contract.

The per curiam cites not a single case holding that an agreement to arbitrate must include or attach a copy of the arbitration rules to be a valid and complete agreement to arbitrate. Indeed, it would be the rare employment contract or business contract that attached arbitration rules to the agreement itself. This is not to say that an agreement need not set out any information as to what rules will govern arbitration, but only that those rules need not be set out in the contract itself. Reference to the appropriate rules is adequate.

In *Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc., 37 S.W.3d 843 (Mo. App. 2001)*, and *Jim Carlson Construction, Inc. v. Bailey, 769 S.W.2d 480 (Mo. App. 1989)*, the agreements did not themselves contain the arbitration procedures but instead referred to another contract or standard source where they could be ascertained or to another contract that incorporated by reference the arbitration procedures. This incorporating by reference a document that in turn incorporated the terms by reference was held to be adequate. *Metro Demolition, 37 S.W.3d at 847*; *Jim Carlson Constr., 769 S.W.2d at 481*. That is what occurred here; the contract incorporated the NFL Constitution and Bylaws, pursuant to which the guidelines were adopted.

It was on a similar basis that the United States District Court for the Western District of New York rejected a similar argument in *Hojnowski*. *995 F. Supp. 2d at 236-38.* In that case, another former equipment manager for another NFL team challenged the

10

arbitration provision of his employment contract when he sued for age discrimination. Hojnowski's employment contract included a similarly worded arbitration agreement, and he was not provided with a copy of the guidelines. *Id. at 235.* Like Mr. Hewitt, Hojnowski claimed that this rendered the arbitration agreement invalid for lack of mutual assent to essential terms. *Id. at 236-37.*

*Hojnowski* rejected the argument that the validity of an arbitration agreement requires that the parties be provided with copies of the arbitration rules or that the particular set of rules must be expressly identified in the agreement, noting no case had been cited requiring that the parties be given a copy of the relevant rules when they were otherwise accessible.[5] *Id. at 237.* Rather, the federal court found:

> [B]ecause Hojnowski was fully aware any dispute would be arbitrated before the NFL Commissioner, and because that tribunal clearly had an established set of rules governing arbitration procedure, those rules (which Hojnowski does not argue were inaccessible) were sufficiently incorporated into the agreement and knowledge thereof can be imputed to Hojnowski.

*Id. at 237-38. See also Canterbury v. Parsons Constructors, Inc., No. 08-0104-CV-W-HFS, 2009 WL 899661, at \*2 (W.D. Mo. Mar. 27, 2009)* (unreported) ("[T]he omission of further details about the [arbitration] program is not fatal. The briefing offers no case law establishing such a defense to arbitration").

This reasoning is directly applicable here. The arbitration rules are contained in a document titled Dispute Resolution Guidelines prepared pursuant to the authority granted

---

[5] I agree with the *Hojnowski* court's admonishment that it is "prudent to explicitly refer to, or even include in the contract itself the specific rules that would govern any arbitration proceeding." *995 F. Supp. 2d at 238.* Under the facts and circumstances of the present case, however, the reference was legally not inadequate.

11

the commissioner by the NFL Constitution and Bylaws and used in all NFL arbitrations. The per curiam seems to hold that, because the guidelines themselves were not specifically referenced, Mr. Hewitt was unable to determine what rules governed and in fact no rules applied. But this just is not the case. The contract says that the parties will be bound by the NFL Constitution and Bylaws, the guidelines were adopted pursuant to the NFL commissioner's authority under the constitution and bylaws, and no prior case has expressed any confusion as to what these guidelines are.

Mr. Hewitt has not done so either. Mr. Hewitt does not claim that he thought a different set of rules were being referred to or which would govern. This is not a case in which a signatory to an agreement asked to see what rules governed or was misled into believing that the arbitration would be governed by some rules other than the guidelines. This case is about Mr. Hewitt and whether he was unable to determine what rules governed the arbitration, not about how arbitration agreements could best be drafted. It made no difference to his conduct that the contract specifically mentioned the NFL "Constitution and By-laws and Rules and Regulations" without specifically referring to the guidelines themselves. Mr. Hewitt never inquired about what arbitration rules governed or indicated he did not know where they could be found. Mr. Hewitt agreed to arbitration under the NFL rules, and the only place that the NFL sets out the rules governing arbitration are in the guidelines adopted under the rules.

The only reason Mr. Hewitt may not have known what the guidelines said or where they were, despite having signed a similar contract with similar terms for up to 40 years, is due not to an indefiniteness of the contract but to his own unique lack of

12

curiosity. To quote from the trial judge's opinion below:

> Mr. Hewitt, by his own admission, signed either this employment contract, or contracts substantially similar to it, for forty years. This contract clearly references the "Constitution and By-laws and Rules and Regulations of the National Football League." If Mr. Hewitt did not read his contract, inquire about its terms or ask for supporting documents during those decades, the [c]ourt is not able to turn back the hands of time and shield him from his own contractual promises.

The trial court thereby held that, as a matter of fact, Mr. Hewitt had sufficient opportunity to determine the rules but chose not to do so. Consequently, he is bound by them. The trial court's ruling is consistent with that in *Ludwig v. Equitable Life Assurance Soc'y of U.S., 978 F. Supp. 1379, 1382 (D. Kan. 1997)*, which rejected a former employee's very similar claim that an arbitration agreement was not enforceable because she did not receive a copy of the governing code when she signed the agreement. *Ludwig* noted that the employee did not claim she was denied a copy of the code, the arbitration agreement made clear all disputes were subject to arbitration, and the court could solve any ambiguities by construing the arbitration provision liberally to effectuate its purpose. Therefore, the rules were sufficiently definite for the arbitration to proceed. *Id.*

Similarly, here, the rules are sufficiently specific and ascertainable to govern the arbitration. In fact, because the trial court referred this matter to arbitration, the parties have been preparing for the arbitration through discovery and otherwise under the very guidelines that the per curiam says are too unknowable to govern. The per curiam's hypothetical and speculative concern about a potential for confusion, therefore, should have no application here, and does not make this arbitration contract unconscionable or

require substitution of arbitration rules under the MUAA.

For all of these reasons, I would affirm the trial court's referral of this matter to arbitration. But, because a majority holds that the arbitrator is disqualified and that the NFL guidelines do not provide the terms governing the arbitration—points with which I disagree for the reasons noted above—I agree with the per curiam's holding in Section VII.B. Accordingly, I agree to the issuance of a permanent writ as set out by the majority opinion.

                                          _____

                                           **LAURA DENVIR STITH, JUDGE**



# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. TODD HEWITT,     )
                                        )
            Relator,               )
                                          )
vs.                                      )
                                       )     No. SC93846
HONORABLE KRISTINE KERR,       )
JUDGE, CIRCUIT COURT FOR        )
ST. LOUIS COUNTY, MISSOURI,     )
                                         )
           Respondent.          )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur with the per curiam opinion to the extent it holds that mandamus is an appropriate remedy, that the NFL dispute resolution guidelines were not incorporated into Hewitt's contract, and that designating the NFL commissioner as the arbitrator is unconscionable. I respectfully dissent from the per curiam opinion to the extent it holds that Hewitt should be compelled to arbitrate the underlying dispute. The per curiam opinion holds that the arbitration agreement is enforceable even though the essential terms of the alleged agreement as set forth in the NFL dispute resolution guidelines (guidelines) were never incorporated into Hewitt's employment contract. The net result is that Hewitt is forced to arbitrate even though the bedrock necessity of an enforceable contract – mutual agreement to the essential terms – is absent in this case. This Court

should issue a writ of mandamus to prevent the trial court from compelling arbitration pursuant to an unenforceable arbitration agreement.

Hewitt's employment contract provides that any dispute between Hewitt and the Rams shall be decided by the NFL commissioner, whose decisions are "final, binding, conclusive, and unappealable." The contract further provides that Hewitt is "legally bound by the Constitution and By-Laws, and Rules and Regulations" of the NFL. The NFL constitution and bylaws provide generally that the commissioner "shall have full, complete and final jurisdiction and authority to arbitrate" disputes between Hewitt and the Rams. The constitution and bylaws further provide that the commissioner shall establish procedures "in respect to the provisions of the constitution and bylaws and any enforcement thereof." Accordingly, Hewitt's contract provides that the commissioner will decide any dispute Hewitt has with the Rams and expressly incorporates by reference the arbitration provision in the NFL constitution and bylaws. There is no reference to or incorporation of the guidelines or any other specific arbitration provisions. I agree with the per curiam opinion to the extent it holds that the guidelines are not incorporated into the contract.

The per curiam opinion errs, however, by treating the failure to incorporate the guidelines as a mere gap in the agreement that can be filled by statutorily established default arbitration rules. Default arbitration rules presuppose the existence of an enforceable contract arising from assent to the essential terms of the contract. These rules do not impose contractual obligations where none exist.

Missouri law requires that an enforceable contract include the essential terms that the parties agreed to. *Olson v. Curators of Univ. of Missouri*, 381 S.W.3d 406, 411-12 (Mo. App. 2012); *see also Dayton v. Travelers' Ins. Co.*, 259 S.W. 448, 450-451 (Mo. 1924) (no enforceable life insurance contract where the alleged insured filled out an insurance application and discussed coverage with the insurance broker but "[t]here was no evidence whatever that the [policy] ever came into [the insured's] hands" to show a meeting of minds on the essential terms of the alleged insurance contract). The essential terms of a contract include the identity of the parties, the subject matter of the contract, the price, the consideration, and the promises on both sides. *See Doss & Harper Stone Co. v. Hoover Bros. Farms*, 191 S.W.3d 59, 62 (Mo. App. 2006); *Johnson v. Cook*, 167 S.W.3d 258, 262 (Mo. App. 2005); *Ahrens v. Dodd*, 863 S.W.2d 611, 613 (Mo. App. 1992).

The United States Supreme Court has made it clear that the FAA preserves "generally applicable contract defenses" but preempts "defenses that apply only to arbitration or that derive meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011). The idea behind this provision is to lessen perceived judicial hostility toward arbitration and to place arbitration contracts on equal footing with any other contract. *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 512 (Mo. banc 2012) (citing *Concepcion*, 131 S.Ct. at 1745)). The elimination of perceived judicial hostility toward arbitration does not require unbridled judicial enthusiasm for arbitration. Instead, all that is required is neutrality. Arbitration agreements are placed on equal footing with all other contracts for the simple reason that

arbitration agreements are contracts. Analyzing this case from an arbitration-neutral viewpoint leads to the conclusion that generally applicable principles of Missouri contract law demonstrate the lack of an enforceable arbitration contract in this case.

Although Missouri law predicates the enforceability of a contract on mutual assent to the essential terms, Hewitt's contract with the Rams includes not one single essential term of the alleged arbitration agreement. While the contract provides that the NFL commissioner would arbitrate any dispute, this provision is, as the per curiam opinion holds, unconscionable and unenforceable. What is left then, is literally nothing more than an agreement to "arbitrate" with absolutely no further indication of how, when or under what circumstances any arbitration would be conducted. This alleged arbitration agreement is as unenforceable as a "contract" in which A agrees to "pay" B some undefined sum of money for some undefined reason. If the Rams, a sophisticated multi-million dollar franchise in a multi-billion dollar league, wanted to ensure an unquestionably valid arbitration agreement, the guidelines could have simply been included or, in five words or less, expressly referenced and incorporated into Hewitt's employment contract.

Hewitt's contract does not establish mutual assent to the essential terms of an arbitration process. Instead, the contract and incorporated documents provide only that Hewitt is required to arbitrate disputes pursuant to unknown and undisclosed terms that the commissioner, in his or her sole discretion, deems appropriate. There is no agreement to the essential terms of arbitration. For these reasons, I would hold that the circuit court

4

abused its discretion by compelling arbitration because there is no enforceable arbitration agreement.

_____

Richard B. Teitelman, Judge



# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. TODD HEWITT,       )
                                      )
                Relator,          )
                                        )
      v.                          )       No. SC93846
                                        )
HONORABLE KRISTINE KERR, JUDGE,    )
CIRCUIT COURT FOR ST. LOUIS         )
COUNTY, MISSOURI.                  )
                                        )
              Respondent.      )

## DISSENTING OPINION

### Introduction

This Court's power to issue remedial writs derives from article V, section 4.1 of the Missouri Constitution. *State ex rel. Dir. of Revenue v. Mobley*, 49 S.W.3d 178, 179 (Mo. banc 2001). A writ of mandamus may issue under very limited circumstances as it "is a hard and fast unreasoning writ, and is reserved for extraordinary emergencies." *Norval v. Whitesell*, 605 S.W.2d 789, 791 (Mo. banc 1980).

A court should issue a writ of mandamus only if the relator has demonstrated a clear, unequivocal, and specific right to have the respondent take action. *State ex rel. Missouri Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999). I would not issue a writ of mandamus in this case because Todd Hewitt has an adequate remedy by appeal following arbitration. *See* Rule 84.22(a); *State ex rel. Reser v. Martin*,

576 S.W.2d 289, 290-91 (Mo. banc 1978). I strongly disagree with the per curiam opinion's sidestepping of the statutory right of appeal and issuance of a writ of mandamus in this case, claiming "mandamus is an appropriate remedy when alternative remedies waste judicial resources or result in a burdensome delay, creating irreparable harm to the parties." Slip op. at 7. That justification/rationalization is untenable in a case like this, in which the timeline[1] alone demonstrates that the resolution of contract law issues in response to the motion to compel arbitration under the guise of saving judicial resources or avoiding delay is just the wrong decision.

## Facts and Procedural History

Hewitt sued the St. Louis Rams for age discrimination under the Missouri Human Rights Act (MHRA). The Rams filed a motion to stay the proceedings, or in the alternative to dismiss, and to submit the case to arbitration. The circuit court stayed the proceedings and submitted the case to arbitration. Hewitt then filed a motion to amend the circuit court's order, asking for dismissal so he could immediately appeal. The circuit court sustained the motion and dismissed the case. The court of appeals reversed the dismissal and reinstated the prior stay order. *See Hewitt v. St. Louis Rams P'ship*, 409

---

[1] Writ petition filed in the court of appeals: September 26, 2013
Preliminary order issued by the court of appeals: September 30, 2013
Answer and suggestions in opposition filed: October 9, 2013
Reply suggestions filed: October 11, 2013
Case submitted: October 15, 2013
Writ quashed by opinion–court of appeals: October 22, 2013
Transfer to this Court ordered: February 25, 2014
Relator's substitute brief filed: March 17, 2014
Respondent's substitute brief filed: April 14, 2014
Relator's substitute reply brief filed (pursuant to time extension): May 9, 2014
Argued and submitted: May 21, 2014
Opinion granting writ requiring arbitration by this Court: April 28, 2015

2

S.W.3d 572, 574 (Mo. App. 2013). It held that the proper procedure when compelling arbitration is to stay the court proceedings, not to dismiss the case, because § 435.355.4[2] requires that actions involving an issue subject to arbitration "shall be stayed." *Id.*

An order staying court proceedings and submitting a case to arbitration is not a final judgment. Therefore, Hewitt has no right to appeal at this stage of the proceedings. "The right to appeal is purely statutory . . . ." *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011) (internal quotation marks omitted). Generally, an appeal is available only from a final judgment. *See* § 512.020(5), RSMo Supp. 2013. There is an exception for those seeking to *enforce* arbitration agreements but not for those opposing arbitration. If a circuit court refuses to allow arbitration, an appeal is immediately available (this is known as an "interlocutory" appeal because issues remain unresolved.). *See* § 435.440.1(1)-(2). On the other hand, the statute provides no interlocutory appeal from a circuit court's order *submitting* a case to arbitration. *State ex rel. MCS Bldg. Co. v. KKM Med.*, 896 S.W.2d 51, 53 (Mo. App. 1995). If a circuit court submits a case to arbitration, that ruling stands until the end of the circuit court proceedings.

Awaiting the end of the circuit court proceedings to appeal its rulings is the normal procedure, not the exception. Hewitt attempted to avoid the delay of an appeal and filed a petition for an extraordinary writ. The court of appeals issued a preliminary order in mandamus (no preliminary writ of prohibition was issued) and issued an opinion quashing the writ. Thereafter, this Court granted transfer. When the court of appeals issues an opinion in a writ case, and thereafter this Court grants transfer, this Court treats

---

[2] Statutory citations are to RSMo 2000 except where otherwise indicated.

3

the case as if the writ petition were filed originally in this Court. *See State ex rel. Newport v. Wiesman*, 627 S.W.2d 874, 874-75, 880 (Mo. banc 1982) (deciding a mandamus case filed originally in the court of appeals, following transfer); *State ex rel. Adrian Bank v. Luten*, 488 S.W.2d 636, 637 (Mo. banc 1973) (stating that the Court would treat a prohibition case as if the writ petition were filed originally in this Court, following transfer), *overruled on other grounds by State ex rel. Farmers Ins. Co. v. Murphy*, 518 S.W.2d 655, 664 (Mo. banc 1975).

### Standard Required to Issue a Writ of Mandamus

This Court set out the standard for mandamus in *State ex rel. Missouri Growth Association*:

> Mandamus is a discretionary writ, and there is no right to have the writ issued. Mandamus will lie only when there is a clear, unequivocal, specific right to be enforced. The purpose of the writ is to execute, not adjudicate. Mandamus is only appropriate to require the performance of a ministerial act. **Conversely, mandamus cannot be used to control the judgment or discretion of a public official.**

998 S.W.2d at 788 (emphasis added) (citations and internal quotation marks omitted) (reversing the issuance of a writ of mandamus). When the law gives the respondent discretion, mandamus is inappropriate regardless of whether that discretion is abused. *See id.* at 788-89. In addition, it has long been settled that "[b]efore mandamus will lie, something more is required than the likelihood that the alternative remedies may involve inconvenient delay." *State ex rel. Kelley v. Mitchell*, 595 S.W.2d 261, 268 (Mo. banc 1980). As the Court stated in *State ex rel. Kelley*, quoting *State ex rel. Phelan v. Englemann*, 86 Mo. 551, 561-62 (1885):

4

Mandamus is not the proper remedy in this case. It is among the fundamentals of the law relating to the issuance of such a writ that it will not be awarded but as an extraordinary remedy, only issuing when the law, in the ordinary methods of its procedure, is powerless to grant relief. It results from this principle that relief will not be granted an aggrieved party in this unusual way, where he may attain the same result by invoking another adequate legal remedy. In all such cases the courts uniformly refuse to exercise their extraordinary jurisdiction in behalf of a party who, in such a situation, seeks it. . . . And the principle announced in respect to refusing the writ of mandamus is not affected, nor the case changed because the appropriate remedy may involve inconvenient delay, or operate harshly or oppressively on the party complaining . . . .

*Id.* (omissions in original). In my view, this Court should adhere to its precedent and not issue the extraordinary writ of mandamus when adequate relief may be had by alternative means. *Id.* at 269. The nature of the mandamus remedy itself counsels in favor of restraint.

Furthermore, mandamus issues only for the relief *requested* and should not be used to fashion a new remedy not already clearly established. *See State ex rel. Corcoran v. Carnahan*, 669 S.W.2d 548 (Mo. banc 1984). "[T]he rule is well settled that … he who seeks mandamus must specify just what he wants, nothing more or less. Thus, unless we can grant the relief sought, we can grant no relief." *State ex rel. Hart v. City of St. Louis*, 204 S.W.2d 234, 240 (Mo. banc 1947) (citations and internal quotation marks omitted); *see also State ex rel. State Highway Comm'n v. Allison*, 296 S.W.2d 104, 111-12 (Mo. banc 1956) (acknowledging that the prayer for relief in a mandamus petition binds the Court's grant of relief).

Hewitt has convinced those members of this Court who join in the per curiam opinion to sidestep the requirement of a final judgment. While Hewitt succeeded in baiting the Court to review his contract claims by filing a petition for an extraordinary

writ of mandamus to prohibit arbitration of his claims, he failed to obtain the relief he sought: not to arbitrate at all. As a result of the per curiam opinion, he will be forced to arbitrate pursuant to terms neither party requested or anticipated.[3] It defies logic that this Court should use an extraordinary writ to instruct the circuit court to impose a remedy that Hewitt may not have even wanted and that he certainly did not request.

Although this Court has incorrectly stated and applied the standard for when an appellate court should issue a writ of mandamus, this Court need not perpetuate the error. The principal opinion relies solely on *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 855 (Mo. banc 2006), for authority to conduct a merits review of the legal issues presented in this case, which are nothing more than issues of contract law and statutory interpretation. The principal opinion states, "This Court recognized, in *State ex rel. Vincent v. Schneider*, that a writ of mandamus is an appropriate mechanism to review whether a motion to compel arbitration was improperly sustained." Slip op. at 5. There are two major mistakes in relying on *State ex rel. Vincent* as authority for that proposition. First, not one sentence in *State ex rel. Vincent* even discusses or analyzes whether a writ of mandamus is "an appropriate mechanism" to review an order sustaining or overruling a motion to compel arbitration. *State ex rel. Vincent v. Schneider* did not overrule *sub silentio* all of this Court's opinions regarding what is required for this Court

---

[3] Although I disagree with both the per curiam opinion and with Judge Stith that the Court should decide this writ case as if it were an ordinary appeal, if the record in this case is to be reviewed as an appeal, I would agree with Judge Stith's determination that the record supports that the parties agree to arbitrate pursuant to the NFL guidelines, which at least gives proper deference to the circuit court's credibility determinations and its factual findings of the merits. The circuit court's conclusions that the arbitration agreement is not unconscionable and must be enforced according to its terms as written is supported by this record.

to issue a writ of mandamus. It is basic American jurisprudence that issues not analyzed or discussed in an opinion provide no precedential value. "*Sub silentio* is defined as 'without notice being taken or without making a particular point of the matter in question.'" *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 37 n.10 (Mo. banc 2013) ("'If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*.'") (alteration in original); *see also State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013) ("[T]he implicit nature of a *sub silentio* holding has no *stare decisis* effect and is not binding on future decisions of this Court.").

Second, there is no question that the constitution provides that the circuit court has jurisdiction to rule on a motion to compel arbitration and that the remedy provided by the legislature to review the circuit court's ruling, whether it sustains or overrules the motion to compel arbitration, is by appeal. Because the legislature has provided for an adequate remedy at law—a statutory right of appeal—a writ of mandamus is not appropriate. *See* Rule 84.22 (a).[4]

### Hewitt's Appellate Remedy Is Adequate

Hewitt argues, in part, that the circuit court erred by submitting the case to arbitration because the arbitration agreement is unconscionable. His primary argument

---

[4] The parties in this case did brief and argue the procedural issue of whether an extraordinary writ is appropriate to resolve the issues presented. The principal opinion demonstrates the problem with this Court treating an original proceeding in mandamus as if it were an appeal. The prayer for relief in Hewitt's writ petition requests an order requiring the circuit court to overrule the Rams' motion to compel arbitration. It does not request the relief the per curiam opinion grants: an order modifying the preliminary order this Court did not issue but directing the circuit court to appoint a new arbitrator.

7

for unconscionability is that the arbitrator appointed by the agreement, the NFL commissioner, is inherently biased in favor of the Rams. Hewitt can seek the same relief he seeks on this unconscionability claim by filing an application to vacate the arbitrator's decision for "evident partiality" after the arbitrator has issued a decision. Section 435.405.1(2). If Hewitt does not agree with the circuit court's ruling concerning the application to vacate, he can appeal the judgment. *See* § 435.440.1(6).

Hewitt cannot raise his claims of unconscionability in a motion to vacate the award in the circuit court following arbitration because the circuit court has already ruled against him on those claims in the proceedings to compel arbitration.[5] *See* § 435.405.1(5). However, this does not affect Hewitt's statutory right to appeal the circuit court's previous ruling after it enters a final judgment.

After arbitration, the circuit court "shall confirm [the] award" upon application of a party, unless the court is urged to vacate, modify, or correct the award. Section 435.400. If the circuit court confirms, modifies, or corrects the award—that is, if it does not vacate the award—"judgment or decree shall be entered." Section 435.415. An appeal can then be taken from that judgment or decree "in the manner and to the same extent as from orders or judgments in a civil action." Section 435.440.1(6), .2.

A party can challenge the circuit court's previous orders in the case in an appeal from a final judgment. *See* § 512.020(5), RSMo Supp. 2013 ("[A] failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of

---

[5] Section 435.405.1(5) allows a party to claim, in an application to vacate the arbitration award, that there was no agreement to arbitrate, as long as the circuit court has not already ruled against such a finding during proceedings to compel arbitration.

8

the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case."). Therefore, if the arbitrator's award stands in any form, Hewitt can challenge the circuit court's previous ruling that there was a contract to arbitrate in an appeal from the circuit court's final judgment. His appellate remedy, like all others who must wait until the end of circuit court proceedings to challenge its rulings, is adequate.

Judge Stith's opinion cites two of this Court's cases for the proposition that a writ of mandamus is the appropriate procedure. Neither case even hinted that a writ should be used. Both were appeals. *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 487 (Mo. banc 2012); *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 (Mo. banc 2009). Judge Stith's opinion also suggests that the immediate use of a writ is necessary because "the courts" should review whether there is a valid contract to arbitrate before arbitration takes place. In fact, the legislature provided for this type of pre-arbitration judicial review by permitting *circuit courts* to determine the validity of arbitration agreements when a challenge is brought. *See* §§ 435.355, 435.435. However, when a circuit court concludes there is a valid arbitration agreement, the statutes make clear that the time for review by *appellate courts* is after the arbitration takes place, at the end of the circuit court proceedings. A writ should not be used to undermine this legislative choice—which can hardly be considered "pointless"—to favor the swift resolution of arbitrable cases without the routine interruption of interlocutory appeals challenging arbitration agreements. Like

9

in the vast majority of other cases, the end-of-case right to appeal gives adequate protection to those wishing to challenge circuit court errors.[6]

## Conclusion

Notably, Hewitt does not argue that he cannot appeal the circuit court's rulings after it reaches a final judgment, but that it would be unduly burdensome to wait. In my view, the "alternative remedies waste judicial resources or result in a burdensome delay" justification applied by the principal opinion certainly has not proved itself useful in this case[7] and leaves the door open for unending interruptions by appellate courts attempting to correct discretionary rulings or errors of law intended to be resolved by the statutory appeals process. The General Assembly has foreclosed an appeal for Hewitt at this stage of the proceedings, but he has the ability to raise his claims, including his specific claim that the arbitrator is biased, after arbitration during the normal course of judicial review and appeal. Because Hewitt has an adequate remedy by appeal, I would not issue an extraordinary writ.

_____
Zel M. Fischer, Judge

---

[6] The issue of whether Missouri's version of the Uniform Arbitration Act denies a challenger to an arbitration agreement a day in court, in violation of the "open courts" guarantee of the Missouri Constitution, is for another day. The briefing in this Court does not raise any argument based on the open courts guarantee, and the issue is not preserved.

[7] Had the request for extraordinary writ been promptly and properly denied, this case would already have proceeded to arbitration, and, if necessary, with the benefit of a full and complete record final judgment, an appeal could have been sought.

10



# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. TODD HEWITT,     )
         )
        Relator,     )
         )
v.         )     No.  SC93846
         )
HONORABLE KRISTINE KERR,     )
JUDGE, CIRCUIT COURT FOR     )
ST. LOUIS COUNTY, MISSOURI,     )
         )
        Respondent.     )

## DISSENTING OPINION

Like rescuing a drowning man by throwing him an anvil, the per curiam opinion purports to grant "relief" to Petitioner by ordering him to participate in the very thing he asked this Court to stop, i.e., his arbitration. On its way to this strange conclusion, the plurality opinion ignores:

> (1) the trial court's role as the finder of facts and its determination that Petitioner had an opportunity to discover the arbitration rules and chose not to do so, *see* Sep. Op. of Judge Stith, at p.13;
>
> (2) the constitutional separation of powers which gives the legislature – not this Court – the authority to decide which interlocutory appeals are permitted and which are not, *see* Sep. Op. of Judge Fischer, at p.3; and
>
> (3) this Court's precedent, s*ee*, *e.g.*, *State ex rel. Hart v. City of St. Louis*, 204 S.W.2d 234, 240 (Mo. banc 1947) ("unless we can grant the relief sought, we can grant no relief").

The plurality opinion cites no case in which this Court has micromanaged a trial court's actions to this extent under the guise of an extraordinary writ, particularly one resulting in a writ that takes the petitioner precisely where he does not wish to go.

This is a misuse of the writ of mandamus. *See State ex rel. Fielder v. Kirkwood*, 138 S.W.2d 1009, 1010 (Mo. banc 1940) ("Mandamus will not issue to an inferior court … to direct the entry of a particular judgment."); *State ex rel. McDermott Realty Co. v. McElhinney*, 151 S.W. 457, 460 (Mo. banc 1912) (it is "not the function of a writ of mandamus to direct the course of judicial action in a given cause"). Instead, the only proper purpose of a writ of mandamus is to enforce a clear, unequivocal, and specific right. *State ex rel. Missouri Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999). Here, the "right" that the per curiam opinion purports to be enforcing is so "clear and unequivocal" that it takes four opinions and dozens of pages to locate it. And, one can only imagine the look on Petitioner's face when he learns that this Court has "granted" his petition … yet finds himself being compelled to arbitrate anyway.

For these reasons, and those expressed in Judge Fischer's opinion, I would not issue a permanent writ and would deny the petition.

_____
Paul C. Wilson, Judge